UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:14-cr-120-3 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| JASON MAYS, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT JASON MAYS' MOTION TO SEVER (Doc. 35)**

This criminal case is before the Court on Defendant Jason Mays' Motion to Sever (Doc. 35) and the parties' responsive memoranda (Docs. 42, 43, 52).  During a status conference by telephone with the Court on June 12, 2015, the parties jointly agreed that an evidentiary hearing is not necessary.

**I.      STATEMENT OF THE CASE**

Defendants Jeremy Hanshaw, Ronald Hatfield, and Jason Mays are jointly charged in a five-count second superseding indictment.  A joint trial is scheduled to commence on September 21, 2015.  Mays moves for severance arguing that a separate trial is necessary to avoid a serious risk of substantial prejudice to his trial rights.

**A.      Factual Allegations**

The following factual allegations taken from the second superseding indictment and the parties' memoranda are assumed as true for purposes of this motion.  (Docs. 35, 42, 43, 44, 52).  On August 16 and August 17, 2014, Lawrence County Sheriff's Office deputies Jeremy Hanshaw, Ronald Hatfield, and Jason Mays were on duty at the Lawrence County Jail.  In the late hours of August 16, 2014, L.K. was arrested and

transported to the jail.  L.K. was handcuffed behind the back and entered the booking area where Hanshaw, Hatfield, and Mays were present.  (Doc. 42 at 3).  Minutes after L.K. entered the booking area, and while he was still handcuffed behind the back, Hanshaw and Hatfield punched and kicked L.K., placed L.K. in a chokehold, and slammed L.K. head-first against a door and to the ground.  (*Id.* at 3-4; Doc. 44 at 2).  At one point, L.K. was lying  face-down on the ground restrained in a chokehold by Hanshaw while Hatfield sat on top of L.K. and delivered punches to his abdomen.  (Doc. 42 at 4; Doc. 44 at 2).  While this was occurring, Mays positioned himself in front of a surveillance camera to obstruct the camera's view.  (Doc. 42 at 3-4; Doc. 44 at 2).

L.K. began bleeding from the head and was placed in a restraint chair.  (Doc. 42 at 4; Doc. 44 at 2).  Mays and Hatfield strapped L.K.'s legs into the chair and L.K. remained handcuffed behind the back.  (Doc. 42 at 4; Doc. 44 at 2).  While L.K. sat in the restraint chair, Hatfield grabbed and held L.K. by the neck and struck L.K. in the knee.  (Doc. 44 at 2).  Hanshaw forcibly applied pressure to L.K.'s head wound, smothering him.  (Doc. 42 at 4; Doc. 44 at 2).

Subsequently, L.K.'s handcuffs were removed and he was transferred to a medical gurney for transport to the hospital.  (Doc. 42 at 4).   While restrained on the gurney, Hanshaw choked L.K. and delivered an elbow strike to L.K.'s head.  (*Id.*; Doc. 44 at 2). Mays then struck L.K. in the neck with a closed fist.  (Doc. 42 at 4; Doc. 44 at 2). Shortly thereafter, in the early hours of August 17, 2014, emergency personnel transported L.K. to the hospital.  (Doc. 42 at 4).  Throughout the entire encounter in the

booking area, L.K. neither resisted nor posed a physical threat to Defendants. (Doc. 44 at 2-3).

Immediately after L.K. was transported from the jail, Hanshaw stood outside the jail on a cigarette break with a co-worker who had witnessed the events. (Doc. 43 at 8). Hanshaw told the co-worker that L.K. was combative, which the co-worker interpreted as an attempt to justify the Defendants' actions. (Doc. 42 at 4-5; Doc. 43 at 8; Doc. 44 at 3; Doc. 52 at 2).[1] Hanshaw also told the co-worker that Mays punched L.K. while L.K. was restrained on the medical gurney. (Doc. 42 at 4; Doc. 43 at 4).

Sometime later, Hanshaw wrote a Use of Force Report and an Incident Report. (Doc. 42, Ex. 1).[2] These reports also state that L.K. was combative or resisting. (*Id.*) Hanshaw stated in the Incident Report that Mays restrained L.K. in response to L.K.'s alleged resistance, while the Use of Force Report indicates that L.K. "was restrained" without making specific reference to either Mays or Hatfield. (*Id.*)

On August 21, 2014, Hanshaw and Mays waived their *Miranda* rights and were voluntarily interviewed by Lawrence County Sheriff Detective Aaron Bollinger. (Doc. 42 at 5; Doc. 52 at 1-2). The interviews occurred separately and were recorded. (Doc. 42 at

---

[1] The Government submitted a copy of the co-worker's written witness statement dated August 19, 2014, which was also provided to Mays, as well as the co-worker's grand jury testimony, which was submitted *ex parte*.

[2] Both reports bear the date August 16, 2014 at 11:30 p.m. (*Id.*) However, it appears uncontroverted that this time and date refers to the events described in the reports and that Hanshaw actually wrote the reports sometime later. (*See* Doc. 42 at 9). At the status conference on June 30, 2015, the Court requested that the Government provide additional clarifying or supplemental information regarding the specific time and date that Hanshaw wrote the reports. The Government's supplemental memoranda did not address this issue and refers only to the time and date of the events listed on the reports. (Doc. 52 at 2-3).

5; Doc. 43 at 3).  Hanshaw's interview lasted approximately seventy minutes.  (Doc. 52 at 1-2).  During the interview, Hanshaw stated that Mays punched L.K. while L.K. was on the medical gurney.  (Doc. 42 at 7).[3]  Mays is discussed for approximately forty-five seconds of Hanshaw's seventy minute interview.  (Doc. 52 at 2).

### B.    Criminal Charges

On December 17, 2014, the grand jury returned a two-count indictment charging Defendants Jeremy Hanshaw, Ronald Hatfield, and Jason Mays with conspiracy against rights in violation of 18 U.S.C. § 241, and deprivation of rights under color of law in violation of 18 U.S.C. § 242 and § 2.  (Doc. 1).  On May 6, 2015, the grand jury returned a five-count superseding indictment against the same three Defendants.  (Doc. 28).  The superseding indictment retained the initial two charges against each of the three Defendants and added three additional counts.  (*Id.*)  Count three charges Hatfield and Mays with violating 18 U.S.C. §§ 1519, 2.  (*Id.* at 5).  Counts four and five charge Hanshaw with violations of the same statutes.  (*Id.* at 6).  On July 1, 2015, the grand jury returned a five-count second superseding indictment, which made a minor change to the charging language in count three.  (Doc. 44).[4]

Count one charges Hanshaw, Hatfield, and Mays with conspiring to injure, oppress, threaten, and intimidate L.K. in the free exercise of his Fourth Amendment right to be free from the use of unreasonable force in violation of 18 U.S.C. § 241.  (Doc. 44 at

---

[3] The Government provided the Court and Defense counsel with a copy of the audio-recorded interview.

[4] All three indictments contain identical language in counts one and two.

4

1-3).  The indictment alleges fourteen acts in furtherance of the conspiracy.  (*Id.* at 2-3).
Twelve overt acts occurred while L.K. was in the booking area and primarily involve the
punches, kicks, and other physical acts allegedly perpetrated by Hanshaw and Hatfield.
(*Id.*)  The two other overt acts charged in the indictment involve Hanshaw's allegedly
false statement to the co-worker and false entries in the two written reports, which are
alleged to have been attempts to create false justifications for the assault.  (*Id.* at 3).
These two overt acts were alleged to have occurred sometime after L.K. was transported
to the hospital.  (Doc. 42 at 9).  Mays is alleged to have committed two overt acts in
furtherance of the conspiracy:  blocking the view of the surveillance camera while
Hanshaw had L.K. in a chokehold and punching L.K. in the neck area while L.K. was
restrained on the medical gurney.  (Doc. 44 at 2).

Count two charges that Hanshaw, Hatfield, and Mays, while acting under the color
of state law as deputies of the Lawrence County Sheriff's Office, willfully deprived L.K.
of his constitutional right to be free from the use of unreasonable force.  (Doc. 44 at 4).
Specifically, Defendants are alleged to have used unreasonable force by assaulting L.K.
during the booking process while L.K. was restrained and not posing a threat, resulting in
bodily injury to L.K.  (*Id.*)

Count three alleges that Hatfield and Mays "did knowingly conceal and cover up a
tangible object, specifically a camera recording the unlawful assault on L.K.," with the
intent to impede, obstruct, or influence a federal investigation in violation of 18 U.S.C.
§§ 1519, 2.  (Doc. 44 at 5).  Counts four and five allege that Hanshaw knowingly made
false entries in the Use of Force Report and Incident Report with the intent to impede,

obstruct, or influence a federal investigation in violation of 18 U.S.C. §§ 1519, 2.  (*Id.* at 6-7).

## II.    STANDARD OF REVIEW

Defendants may be charged together pursuant to Fed. R. Crim. P. 8(b) "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  "There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  However, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The language of the rules makes clear that "Rule 14(a) is permissive, not mandatory."  *United States v. James*, 496 F. App'x 541, 546 (6th Cir. 2012).

Once properly joined under Rule 8(b), the Court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  Even if a defendant has shown a risk of prejudice, the Supreme Court instructs that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  *Id.*  Further, "it is well settled that defendants are not entitled to severance merely because they may have a

better chance of acquittal in separate trials." *Id.* at 540. Accordingly, "a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987)). Additionally, "a 'spillover of evidence' from one case to another 'generally does not require severance,' unless Defendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)). In sum, "a request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012).

## III.   ANALYSIS

Mays argues that severance is necessary to prevent a violation of his rights under the Confrontation Clause and to avoid substantial prejudice from a spillover effect and transference of guilt. The Government contends that the Confrontation Clause is not implicated and that any prejudice from a spillover effect or transference of guilt can be addressed through limiting instructions.

### A.   Confrontation Clause

Mays identifies four out-of-court statements by co-defendant Hanshaw that allegedly incriminate Mays and would violate Mays' rights under the Confrontation Clause if Hanshaw elected not to testify. These include the statement to the co-worker immediately after L.K. was transported from the jail, the Use of Force Report and

Incident Report completed sometime after the events at issue, and the statements to Detective Bollinger during the recorded interview on August 21, 2014.  In each of these statements, Hanshaw asserted that L.K. was combative and that Mays punched L.K. Mays contends that severance is necessary because the Government will likely introduce these statements against Hanshaw at a joint trial and that Mays' rights under the Confrontation Clause would be violated if Hanshaw does not testify.

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that "an accused is deprived of his rights under the Confrontation Clause when the confession of a nontestifying codefendant that implicates the accused is introduced into evidence at their joint trial . . . even if the jury is instructed to consider the confession only as evidence against the codefendant."  *United States v. Cope*, 312 F.3d 757, 780-81 (6th Cir. 2002) (citing *Bruton*, 391 U.S. at 137).  Almost two decades later in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court described *Bruton* as holding that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."  *Id.* at 207.  As explained in *Richardson*, there was a Confrontation Clause violation in *Bruton* because "the codefendant's confession 'expressly implicated' the defendant as his accomplice" and "there was not the slightest doubt that it would prove 'powerfully incriminating.'" *Id.* at 208 (quoting *Bruton*, 391 U.S. at 124 n.1, 135).  In contrast, the co-defendant's confession in *Richardson* was "redacted to omit any reference to the defendant."  *Id.* at

202.  With the redaction, "the confession was not incriminating on its face, and became

so only when linked with evidence introduced later at trial."  *Id.* at 208.

The Supreme Court identified the redaction as creating "an important distinction

between this case and *Bruton*, which causes it to fall outside the narrow exception we

have created."  *Richardson*, 481 U.S. at 208.  Accordingly, the Supreme Court expressly

distinguished between "facially incriminating confessions," which are prohibited by

*Bruton*, and "confessions incriminating by connection."  *Id.* at 208-09.  In the latter

situation of a confession "requiring linkage," the Confrontation Clause is not violated

even if other evidence introduced at trial creates an "incriminating inference" between the

redacted confession and the defendant.  *Id.*  The Supreme Court explained that "while it

may not always be simple for the members of a jury to obey the instruction that they

disregard an incriminating inference, there does not exist the overwhelming probability of

their inability to do so that is the foundation of *Bruton*'s exception to the general rule."

*Id.* at 208.  Accordingly, the Supreme Court held that "the Confrontation Clause is not

violated by the admission of a nontestifying codefendant's confession with a proper

limiting instruction when . . . the confession is redacted to eliminate not only the

defendant's name, but any reference to his or her existence."  *Id.* at 211.

Finally, in *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court addressed

"a question that *Richardson* left open, namely, whether redaction that replaces a

defendant's name with an obvious indication of deletion, such as a blank space, the word

'deleted,' or a similar symbol, still falls within *Bruton*'s protective rule."  *Id.* at 192.

Unlike the confession in *Richardson* that was redacted to eliminate any reference to the

existence of another person, the prosecutor in *Gray* "simply replaced the nonconfessing defendant's name with a kind of symbol, namely, the word 'deleted' or a blank space set off by commas." *Id.* After comparing the practical effects of the confessions on a jury, the Supreme Court concluded that a redacted confession containing an "obvious deletion" that "refers directly to the 'existence' of the nonconfessing defendant" violated the Confrontation Clause. *Id.* at 192-93.

The Supreme Court acknowledged that the redactions in *Richardson* and *Gray* both required an inference to connect the confession to the defendant, but clarified that "inference pure and simple cannot make the critical difference." *Gray*, 523 U.S. at 195. Rather, the distinction "depend[s] in significant part upon the *kind* of, not the simple *fact* of, inference." *Id.* at 196. Focusing on the kind of inference required, the Supreme Court found that the redacted confession containing an obvious deletion violated the Confrontation Clause because "[t]he inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* Accordingly, "considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." *Id.* at 195.

Here, the Government concedes that introducing the portion of Hanshaw's statement to Detective Bollinger that allegedly implicates Mays would violate *Bruton*.

(Doc. 42 at 7). However, the Government maintains that the *Bruton* problem is eliminated if the portion of the statement referencing Mays is entirely redacted. Specifically, Hanshaw referenced Mays for approximately forty-five seconds of the seventy minute interview. If the audio recording itself is introduced at trial, the Government proposes to entirely omit those forty-five seconds from the recording. (Doc. 52 at 2). If Detective Bollinger testifies regarding Hanshaw's statements, then Bollinger would not reference that portion of the statements. (*Id.*) Under either proposal, the Government would entirely redact the portion of Hanshaw's statement that referenced Mays. These proposed redactions would eliminate any reference to Mays' existence and, when combined with a proper limiting instruction, would not violate the rule announced in *Bruton*. *Richardson*, 481 U.S. at 211.

Mays does not dispute the sufficiency of these proposed redactions. However, Mays argues that he will suffer prejudice because the Government will attempt to introduce the substance of Hanshaw's statement to Detective Bollinger through Hanshaw's other statements. (Doc. 43 at 3). The Government maintains that Hanshaw's statement to the co-worker and the two written reports do not implicate the Confrontation Clause because they are admissible against Mays under the co-conspirator hearsay exception and will not be offered for the truth of the matter asserted. Fed. R. Evid. 801(d)(2)(E).

"Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009). The Supreme Court in *Crawford v.*

*Washington*, 541 U.S. 36 (2004),  expressly identified statements in furtherance of a

conspiracy as statements that are inherently non-testimonial and do not present a

Confrontation Clause problem.  *Id.* at 56.  Further, "the Confrontation Clause is not

violated by testimony that is not offered for the truth of the matter asserted."  *United*

*States v. Thompson*, 501 F. App'x 347, 363 (6th Cir. 2012) (citing *Crawford*, 541 U.S. at

59 n.9).  Accordingly, there will be no Confrontation Clause issue if the Government's

position prevails.

        First, the Government argues that it will introduce Hanshaw's remaining three

statements not for their truth, but for their falsity, *i.e.*, that Hanshaw falsely stated that

L.K. was combative in an attempt to justify the assault.  (Doc. 42 at 8).  Although not

cited by the Government, ample precedent supports the position that statements offered

for their falsity are not hearsay:

> When statements are offered to prove the falsity of the matter asserted,
> there is no need to assess the credibility of the declarant.  Since there is no
> need to assess the credibility of the declarant of a false statement, we know
> of no purpose which would be served by extending the definition of hearsay
> to cover statements offered for the falsity of the matter asserted.  We
> therefore join those courts which have concluded that statements offered to
> prove the falsity of the matter asserted are not hearsay. *United States v.*
> *Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986).[5]

_____

[5] *See also Anderson v. United States*, 417 U.S. 211, 219-20 (1974) (holding that statements are
not hearsay when "the point of the prosecutor's introducing those statements was simply to prove
that the statements were made so as to establish a foundation for later showing, through other
admissible evidence, that they were false"); *United States v. Sherlin*, 67 F.3d 1208, 1216 (6th Cir.
1995) (concluding that the admission of an out-of-court statement "did not violate Sherlin's
confrontation rights because it was not offered to prove the truth of the matter asserted.
Although the statement did refer to Sherlin, it was the government's position that the statement
was false.   Because the government's position was that Teague's grand jury statement, which
referred to Sherlin, was false, Sherlin's confrontation rights were not implicated by the admission
of the statement." (internal citations omitted)).

Here, the three statements contain multiple assertions, only some of which the Government intends to offer for their falsity.  For example, the Government will likely argue that Hanshaw's assertions in the Incident Report that L.K. "tried to pull away from me," "continued to struggle against the officers," and "became verbally aggressive and threw his arms at me" were false.  (Doc. 42, Ex. 1 at 2).  Additionally, the Government contends that Hanshaw falsely stated to his co-worker that L.K. was "combative."  (Doc. 43 at 4).  To the extent that the Government seeks to introduce the portions of Hanshaw's statements that contain false assertions about L.K.'s conduct, the statements are nonhearsay and admissible.  However, the statements also contain some assertions that the Government will seek to prove as true at trial.  Specifically, Hanshaw asserted that Mays punched L.K.  The parties have not addressed whether the Government could redact the portions of Hanshaw's statements are that inadmissible hearsay assertions and the Court declines to do so *sua sponte* in the context of a motion to sever.  Notwithstanding, the finding that a portion of the statements are not hearsay reduces the overall potential for a violation of Mays' rights under the Confrontation Clause.

Second, the Government argues that Hanshaw's statements are admissible under the co-conspirator hearsay exception in Rule 801(d)(2)(E).  "Under Federal Rule of Evidence 801(d)(2)(E), for co-conspirator hearsay statements to be admissible, the government must show by a preponderance of the evidence that:  (1) a conspiracy existed, (2) the defendant against whom the hearsay is offered was a member of the conspiracy, and (3) that the statements were made during the course and in furtherance of the conspiracy."  *United States v. Benson*, 591 F.3d 491, 501-02 (6th Cir. 2010).

Statements of a co-conspirator admissible under Rule 801(d)(2)(E) are "categorically non-testimonial and also within a 'firmly rooted' exception to the hearsay rule. Therefore, the Confrontation Clause does not bar their admission." *United States v. Tragas*, 727 F.3d 610, 615 (6th Cir. 2013) (internal citations omitted). Similarly, the *Bruton* rule does not apply if the statement is non-testimonial. *Johnson*, 581 F.3d at 326.

Mays primarily argues that the Government cannot establish the third element.[6] The following guidelines frame the inquiry of whether a statement is "in furtherance" of a conspiracy:

> A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy. This requirement is satisfied when the statements are made to apprise a coconspirator of the progress of the conspiracy, to induce his continued participation, or to allay his fears. Statements that prompt a coconspirator to act in a matter that facilitates the carrying out of the conspiracy, or that serve as a necessary part of the conspiracy by concealing or impeding the investigation, are also made in furtherance of the conspiracy. On the other hand, statements regarding concealment that are made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy.

*United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005) (internal citations omitted). Mays relies on a line of precedent that provides "out-of-court statements made *after* the conclusion of the conspiracy are not made 'in furtherance of the conspiracy,' and are thus not admissible under the co-conspirator exception." *United States v. Conrad*, 507 F.3d

---

[6] Mays also argues that the Government cannot satisfy the first two elements by reframing the relevant conspiracy as an unindicted conspiracy to create false justifications. (Doc. 43 at 9-10). This argument is properly directed to the third element, which requires the Government to prove that the statements were made in furtherance of the particular conspiracy charged in the second superseding indictment. If Mays succeeds in proving that the statements were not made in furtherance of the conspiracy to deprive civil rights, then the statements are not admissible.

424, 430 (6th Cir. 2007). Further, "mere idle chatter or casual conversation about past events is not considered a statement in furtherance of the conspiracy." *United States v. Darwich*, 337 F.3d 645, 657 (6th Cir. 2003).

Mays contends that the conspiracy terminated when L.K. was transported to the hospital and Hanshaw could not have made the statements in furtherance of the conspiracy. The Courts of Appeals has recognized "the proposition that a distinction should be made between acts of concealment done in furtherance of the criminal conspiracy and those taken after the criminal objectives have been obtained." *United States v. Gardiner*, 463 F.3d 445, 463 (6th Cir. 2006). It is well settled that "an agreement to conceal a completed crime does not extend the life of a conspiracy." *Id.* However, "[i]n conspiracies where a main objective has not been attained or abandoned and concealment is essential to success of that objective, attempts to conceal the conspiracy are made in furtherance of the conspiracy." *Id.* (quoting *United States v. Howard*, 770 F.2d 57, 61 (6th Cir. 1985)). Additionally, "where a conspiracy contemplates a continuity of purpose and continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *Id.* (quoting *United States v. Mays*, 512 F.2d 637, 642 (6th Cir. 1975)). Under this scenario, the Court must examine whether the activities alleged in the indictment are "the type of activity that contemplates a continuity of purpose and continued performance of acts." *Id.* at 464.

The Government notes that the indictment charges that Hanshaw's statement to the co-worker and written reports were two of the fourteen overt acts in furtherance of the conspiracy.  (Doc. 44 at 3).  Specifically, the second superseding indictment charges that these statements were attempts to create a false justification for the assault.  (*Id.*) However, allegations in the indictment the statements were overt acts in furtherance of the conspiracy cannot satisfy the preponderance of the evidence standard required for admission of a statement under Rule 801(d)(2)(E).

The Government also argues Hanshaw made the statements in furtherance of the conspiracy because Hanshaw attempted to prevent the Defendants' use of force from being deemed unreasonable, *i.e.*, that the Defendants used reasonable force and did not deprive L.K. of his Fourth Amendment right.  The Government cites *United States v. Figueroa*, 729 F.3d 267 (3d Cir. 2013), in support of its argument that the falsified reports were made in furtherance of the conspiracy as an attempt to avoid detection.  In *Figueroa*, the indictment charged Figueroa and Bayard, both police officers, with five substantive civil rights violations under 18 U.S.C. § 242.  *Id.* at 270.  Additionally, the indictment charged that Figueroa and Bayard, along with three other police officers who testified as cooperating witnesses, conspired to deprive others of their civil rights in violation of 18 U.S.C. § 241.  *Id.*  Figueroa and Bayard were alleged to have planted drugs on arrestees, conducted illegal searches, personally confiscated money, and made false statements in police reports about these events.  *Id.* at 270-71.  Ultimately, the jury convicted Figueroa on the conspiracy charge and two substantive civil rights violations

relating to events occurring between September 14 and September 17, 2008. *Id.* at 271. Bayard was acquitted on all counts. *Id.*

At trial, a cooperating witness testified regarding an out-of-court statement made by Bayard about the police report that Figueroa authored after an arrest on September 17, 2008. *Figueroa*, 729 F.3d at 275. That arrest formed the basis for one of Figueroa's substantive convictions and Bayard made the relevant statements "during one of these three nights" that the jury found the conspiracy existed. *Id.* The cooperating witness testified that Bayard expressed his displeasure with how Figueroa had written the report and that Figueroa had ignored Bayard's advice about the "right way to write the report." *Id.* The district court found that the statement was admissible under Rule 801(d)(2)(E) because it was "a comment on the inability to instruct a co-conspirator on how to write police reports so that no one got into trouble." *Id.* at 276. This evidentiary ruling was upheld on appeal because the record reflected that "the writing of false reports was part of the conspiracy and that Bayard's statement, expressing concern about Figueroa's inept report-writing, was in furtherance of the conspiracy." *Id.*

The Government's attempt to analogize Bayard's statement in *Figueroa* to Hanshaw's alleged false justifications to his co-worker and in the reports is unpersuasive based on differences in the objectives and scope of the respective conspiracies. In *Figueroa*, the indictment charged a conspiracy "to deprive others of their civil rights" and the jury found Figueroa had participated in a conspiracy from September 14 to September 17, 2008. *Figueroa*, 729 F.3d at 271-72. Notably, the charged conspiracy involved an ongoing conspiracy to deprive the general public of their civil rights, rather than a

conspiracy to deprive a specific person of his or her civil rights. *Id.* This conspiracy is akin to one that "contemplates a continuity of purpose and continued performance of acts" and Bayard's statement about the police report was intended to help avoid detection of an ongoing conspiracy. *See Gardiner*, 463 F.3d at 463.

Here, the indictments charged a conspiracy to deprive one specific person of his constitutional right to be free from the unreasonable use of force.  (Doc. 44 at 1-3). Accordingly, the criminal objective of the charged conspiracy appears limited to applying unreasonable force to L.K. in particular, rather than an ongoing conspiracy to deprive all arrestees of their civil rights.[7]  The Government does not contend that Defendants conspired to apply unreasonable force to L.K. at some point in the future after he was transported from the jail to the hospital.  This type of conspiracy does not contemplate a "continuity of purpose and continued performance of acts." *Gardiner*, 463 F.3d at 464. Rather, the objective of the conspiracy, namely to deprive L.K. of his right to be free from the unreasonable use of force, was likely either completed or abandoned when L.K. was transported to the hospital.  The Government has not met its evidentiary burden of proving otherwise.

The relevant inquiry in a § 1983 Fourth Amendment excessive force claim is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Further, the "'reasonableness' of a

---

[7] The Government's Rule 404(b) disclosure that Defendants are alleged to have applied unreasonable force to a different arrestee on the same night furthers this conclusion.

18

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.  The Court of Appeals has applied the *Graham* standard to criminal charges of deprivation of civil rights under 18 U.S.C. § 242 that are premised on the use of unreasonable force.  *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009).

It appears undisputed that Hanshaw made the three statements at issue after L.K. was transported from the jail to the hospital.  For purposes of this motion, there is also no dispute that Defendants applied some amount of force to L.K.  The primary issue is whether that force was unreasonable.  The reasonableness of any force that Defendants applied will be measured "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.  When Hanshaw made the three statements at issue, all actions and circumstances relevant to the reasonableness determination were completed, *i.e.*, the amount of force applied, whether L.K. posed an immediate threat to Defendants' safety, and whether L.K. was actively resisting.  *See Graham*, 490 U.S. at 396.  The Government's contention is that Hanshaw made the statements in an attempt to create a false justification for Defendants' actions.  In other words, Hanshaw attempted to portray the Defendants as using reasonable force in response to active resistance from L.K. Because the Fourth Amendment does not protect against the application of reasonable force, Hanshaw's attempt to portray the force as reasonable sought to conceal the allegedly criminal nature of those prior acts.

In ruling of the admissibility of a statement under Rule 801(d)(2)(E), the Court must distinguish between "acts of concealment done in furtherance of the criminal

19

conspiracy and those taken after the criminal objectives have been obtained." *Gardiner*, 463 F.3d at 463.  The Government has not established by a preponderance of the evidence that Hanshaw made the three statements at issue in furtherance of the conspiracy. However, the Court is cognizant that this issue was raised in the context of a motion to sever.  This preliminary finding does not preclude the Government from presenting additional evidence in a motion that directly addresses the admissibility of the statements.

The Government's failure to establish by a preponderance of the evidence that the statements are admissible under Rule 801(d)(2)(E) does not necessarily mean that Defendant has satisfied the "high standard required to prevail on a severance motion." *Driver*, 535 F.3d at 427.

### B.    Spillover Evidence and Transference of Guilt

Mays also contends that severance is necessary because there is a substantial likelihood that Mays will suffer substantial prejudice from a spillover effect and transference of guilt.

Mays argues that varying degrees of culpability among the three Defendants will result in a transference of guilt because only two of the fourteen overt acts charged in the indictment that are attributed to Mays.  (Doc. 44 at 2-3)  Specifically, Mays is alleged to have attempted to block a surveillance camera and punched L.K. one time.  In contrast, Hanshaw and Hatfield are charged with a total of ten overt acts that include multiple instances of punching, kicking, slamming, and applying chokeholds to L.K.  In *Zafiro*, the Supreme Court noted that "[w]hen many defendants are tried together in a complex

20

case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539.

The Government disclosed potential Rule 404(b) evidence involving allegations that Hanshaw mistreated three inmates at a jail in Kentucky during prior employment. (Doc. 42 at 3).  However, the Government did not disclose any details beyond the inmates' names and represents that it will not introduce this Rule 404(b) evidence in its case-in-chief, but has reserved the right to introduce such evidence for rebuttal or impeachment purposes.  (*Id.*)[8]  Mays contends that he will suffer substantial prejudice if the Government introduces this Rule 404(b) evidence against Hanshaw.[9]  Mays notes that the possibility that the Government will seek to introduce this evidence largely depends on the trial strategy employed by his co-Defendants and that the notices of intent to present expert witness testimony filed by Hanshaw and Hatfield only serve to increase that possibility.

---

[8] The Court does not address whether this evidence is admissible under Rule 404(b).  *United States v. Adams*, 722, F.3d 788, 810 (6th Cir. 2013).  However, it is clear that the Government has provided "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial" in response to Mays' request.  Fed. R. Evid. 404(b)(2).  Accordingly, Mays' Request for Pretrial Disclosure of 404(b) Evidence of Other Crimes, Wrongs, or Acts (Doc. 36) is **DENIED as moot**.  The Government remains under a "continuing obligation" to supplement these disclosures, if necessary.  *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1995).

[9] The Government also disclosed allegations that the three Defendants mistreated two other arrestees on August 16 and 17, 2014.  (*Id.*)  Mays does not address this disclosure.

Mays seeks to supplement the Government's limited disclosures with filings from civil actions initiated by two of the persons identified by the Government.[10]  Attached to Mays' reply memoranda is an answer in which Hanshaw and his co-defendants jointly deny all allegations of excessive force, and a report and recommendations issued in the other action.  (Doc. 43, Exs. 1, 2).  The plaintiffs in both actions appear to have alleged that Hanshaw used excessive force during their incarceration.  Mays represents that both actions were dismissed at the summary judgment stage for failure to exhaust administrative remedies, although dispositive orders were not filed as part of the record.

May argues that the combination of the differing degrees of culpability and the potential for Rule 404(b) evidence creates a substantial likelihood that Mays will be substantially prejudiced at a joint trial.  The Government concedes that this Rule 404(b) evidence would not be admissible against Mays, but contends that any spillover evidence or transference of guilt would be minimal and is properly addressed through limiting instructions rather than severance.

Here, the Court finds that Mays has not met the "high standard required to prevail on a severance motion."  *Driver*, 535 F.3d at 427.  Mays argues in a conclusory fashion that limiting instructions will not reduce the risk of prejudice.  However, "a request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants."  *Id.* (quoting *Causey*, 834 F.2d at 1287).  Further, "merely because inflammatory evidence is admitted against one defendant, not directly

---

[10] No substantive information is provided regarding the third person identified by the Government.

involving another codefendant (and with which the other is not charged) does not, in and

of itself, prove substantial prejudice in the latter's trial." *United States v. Frye*, 202 F.3d

270 (6th Cir. 2000) (quoting *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985)).

> [I]n a joint trial, there is always a danger that the jury will convict on the
> basis of the cumulative evidence rather than on the basis of the evidence
> relating to each defendant.  However, we adhere to the view, as previously
> stated by our court, that the jury must be presumed capable of sorting out
> the evidence and considering the case of each defendant separately.  The
> presentation of evidence applicable to more than one defendant is simply a
> fact of life in multiple defendant cases.

*Driver*, 535 F.3d at 427 (quoting *Causey*, 834 F.2d at 1288) (internal citations and

quotation marks omitted).  Joint trials are particularly appropriate when the defendants

are charged in a conspiracy.  *Cope*, 312 F.3d at 780.

Here, Mays is unable to overcome the presumptions that the jury will be able to

follow limiting instructions and properly compartmentalize evidence.  Mays does not

argue that the Defendants will present mutually antagonistic defenses.  The Court of

Appeals has recognized that severance based on a spillover effect or transference of guilt

is appropriate only in particularly complex cases involving large numbers of conspiracies

and defendants:  "The existence of . . . a 'spill-over' or 'guilt transference' effect . . . turns

in part on whether the numbers of conspiracies and conspirators involved were too great

for the jury to give each defendant the separate and individual consideration of the

evidence against him to which he was entitled."  *Gallo*, 763 F.2d at 1526 (quoting *United

States v. Tolliver*, 541 F.2d 958, 962 (2d Cir. 1976)).  In *Gallo*, the joint trial of five

defendants was insufficient to show a substantial risk of prejudice from a spillover effect.

*Id.*  This case involves three defendants and five charges based on actions alleged to have occurred over the course of a few hours.

Determining the risk of prejudice and fashioning an appropriate remedy short of severance are matters left to this Court's sound discretion.  *Zafiro*, 506 U.S. at 541.  The risk of prejudice presented here is minimal and is readily cured by limiting instructions. Further, any potential for jury confusion is greatly outweighed by society's need for a speedy and efficient trial, a rule that is "particularly true when, as here, the offenses charged may be established against [all] defendants with the same evidence and result from the same series of acts.  *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990) (internal citation omitted).  Mays does not advance any specific grounds or arguments in support of his contention that he will suffer substantial prejudice absent severance. *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) ("The defendant's conclusory statement that the joinder of the counts 'affected' the jury's ability to render a fair and impartial verdict does not suffice to show substantial prejudice.").  A defendant "is not entitled to severance simply because the evidence against a co-defendant is far more damaging than the evidence against him" or "merely because his likelihood of acquittal would be greater if severance were granted."  *United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004).  Limiting instructions and redactions will reduce the risk of any prejudice.

Accordingly, the Court concludes that severance is not appropriate.

## IV.    CONCLUSION

Wherefore, for these reasons, Defendant Jason Mays' Motion for Severance (Doc. 35) is hereby **DENIED**.  This criminal action will proceed to a joint trial by jury, commencing on September 21, 2015.

**IT IS SO ORDERED.**

Date:   8/3/15                              _s/ Timothy S. Black_
                                            Timothy S. Black
                                            United States District Judge